UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| LOGAN MEDIATE, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 1:16-cv-00716-TWP-MJD |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

**Entry Discussing Motion for Relief Pursuant to 28 U.S.C. § 2255
and Denying Certificate of Appealability**

For the reasons explained in this entry, Petitioner Logan Mediate's ("Mediate") motion for relief pursuant to 28 U.S.C. § 2255 must be **denied** and the action dismissed with prejudice. In addition, the Court finds that a certificate of appealability should not issue.

### I. The § 2255 Motion

A motion pursuant to 28 U.S.C. § 2255 is the presumptive means by which a federal prisoner can challenge his conviction or sentence. *See Davis v. United States*, 417 U.S. 333, 343 (1974). A court may grant relief from a federal conviction or sentence pursuant to § 2255 "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). The scope of relief available under § 2255 is narrow, limited to "an error of law that is jurisdictional, constitutional, or constitutes a fundamental defect which inherently results in a complete miscarriage of justice." *Borre v. United States*, 940 F.2d 215, 217 (7th Cir. 1991).

## II. Factual Background

Mediate's case began with the government's investigation and prosecution of his mother, Jennifer Gaddy ("Gaddy"), for distributing methamphetamine. According to the complaint initiating her prosecution and the factual basis for her guilty plea, Gaddy sold methamphetamine in three controlled buys. Gaddy dkts. 1, 31.[1] In one of the controlled buys, Gaddy sold methamphetamine on January 15, 2014, inside a residence located at 2519 South McClure Street in Indianapolis. Gaddy dkt. 31. The January 15 controlled buy was carried out by a "confidential human source," known as "CHS," who was working with the Federal Bureau of Investigations and a local gang crimes task force. Gaddy dkts. 1, 31. Gaddy was arrested on February 26, 2014, and charged with three counts of distributing methamphetamine. Crim. dkt. 1 at ¶ 7; Gaddy dkt. 12.

According to the complaint filed in his criminal case, Mediate confronted CHS twice on March 17, 2014. Crim. dkt. 1. CHS visited a friend that evening at a residence on Lyons Avenue in Indianapolis. *Id.* at ¶ 8. CHS's children also were present. *See id.* at ¶ 10. When CHS exited the residence, he found that Mediate and two other men had pulled up in a red pickup truck, positioning the truck in a manner that prevented CHS from driving away. *Id.* at ¶ 8. Mediate repeatedly accused CHS of "setting up" Gaddy's arrest through controlled buys. *Id.* at ¶ 9. Eventually, CHS gathered his children and fled to his own residence in Indianapolis's Mars Hill neighborhood. *See id.* at ¶ 10.

The complaint further states that Mediate and the other two men followed CHS. *See id.* Outside CHS's residence, Mediate threatened to kill CHS unless he moved away from the Mars Hill neighborhood. *Id.* at ¶ 11. Mediate also discouraged CHS from testifying against Gaddy. *Id.*

---

[1] In this entry, citations to "Gaddy dkt. *x*" refer to documents filed in Ms. Gaddy's criminal case, 1:14-cr-83-JMS-DML-1. Citations to "crim. dkt. *y*" refer to documents filed in Mr. Mediate's criminal case, 1:14-cr-82-TWP-DML-1. Citations to "civ. dkt. *z*" refer to documents filed in this action, 1:16-cv-716-TWP-MJD.

During this incident, Mediate allegedly pointed a sawed-off shotgun at CHS and fired a round into the air. *Id.* at ¶ 12.

Later on March 17, CHS reported these confrontations to FBI and task force agents, describing Mediate's actions, the pickup truck, and the sawed-off shotgun. *Id.* at ¶ 8–13. On March 24, officers saw a red pickup truck matching CHS's description parked outside 2519 South McClure Street—the location of one of Gaddy's controlled buys. *Id.* at ¶ 14. A resident of the McClure Street home stated that Mediate regularly spent the night there and that, approximately a week earlier, Mediate had borrowed his red pickup truck for the night. *Id.* at ¶ 15. The resident stated that Mediate owned a sawed-off shotgun and led the officers to the bedroom where Mediate stayed. *Id.* In the closet, the officers saw a shotgun matching the description provided by CHS. *Id.* at ¶ 16.

Mediate was subsequently arrested and indicted on five charges. Crim. dkt. 16. On April 2, 2015, Mediate pled guilty to tampering with a witness in violation of 18 U.S.C. § 1512(a)(2) and possessing a short-barreled shotgun in furtherance of a crime of violence in violation of 18 U.S.C. § 924(c)(1)(B)(i). Crim. dkt. 64. During the plea hearing, Mediate admitted that he knew CHS was an informant who would testify against his mother, that he confronted CHS on March 17, 2014, that he had a shotgun present during the confrontation, and that he told CHS he would kill him unless he moved away from Mars Hill. *Id.* at 22:2–23:7. The Court accepted Mediate's guilty plea and, consistent with an agreement between Mediate and the United States, imposed a sentence of 156 months' imprisonment. *Id.* at 24:18–25:1, 33:8–14; crim. dkt. 38 at ¶ 2. Mediate now challenges his conviction on four grounds and asks the Court to remand his criminal case for a jury trial.

### III. Discussion

Mediate challenges the enforceability of his guilty plea on three bases: that he entered his plea without the benefit of effective assistance from his court-appointed attorney; that he did not enter his plea voluntarily; and that he entered his plea without the benefit of exculpatory evidence that the government unlawfully withheld from him. Mediate also asks the Court to vacate his conviction for possessing a short-barreled shotgun in furtherance of a crime of violence based on the Supreme Court's decision in *Johnson v. United States*, 135 S. Ct. 2551 (2015). For the reasons set forth below, the Court finds that none of these arguments presents a basis for relief.[2]

### A.    Ineffective Assistance of Counsel

Mediate first asserts that he pled guilty without the effective assistance of counsel as guaranteed by the Sixth Amendment. Civ. dkt. 1 at 2–5, 7–8. Specifically, Mediate asserts that his court-appointed attorney, Theodore Minch, failed to thoroughly gather evidence, interview witnesses, and otherwise investigate the case. *Id.* In a supplement to his petition, Mediate states that he asked Mr. Minch to investigate CHS's credibility, interview certain witnesses, and obtain video from security cameras at homes and businesses near the locations where he confronted CHS. Civ. dkt. 16 at 2–5. Mediate implies that such an investigation may have uncovered evidence that would have enabled him to successfully defend his charges at a trial or even motivated the government to drop its charges.

A petitioner claiming ineffective assistance of counsel bears the burden of showing that (1) trial counsel's performance fell below objective standards for reasonably effective representation, and (2) this deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 688–94

---

[2] Mr. Mediate's motion asserts an additional argument that he was sentenced to one more month of imprisonment than he bargained for in his plea agreement. *See* civ. dkt. 1 at 6–7. However, he has withdrawn that argument. *See* civ. dkt. 21.

(1984); *United States v. Jones*, 635 F .3d 909, 915 (7th Cir. 2011). To satisfy the first prong of the *Strickland* test, the petitioner must direct the Court to specific acts or omissions of his counsel. *Wyatt v. United States,* 574 F.3d 455, 458 (7th Cir. 2009). The Court must then consider whether, in light of all of the circumstances, counsel's performance was outside the wide range of professionally competent assistance. *Id.* In order to satisfy the prejudice component, Mediate must establish that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

When counsel's "purported deficiency is based on a failure to investigate, we require the petitioner to allege what the investigation would have produced." *Long v. United States*, 847 F.3d 916, 920 (7th Cir. 2017) (internal quotation omitted). It is well-settled that an ineffective assistance claim based on deficient investigation "must provide the court sufficiently precise information, that is, a comprehensive showing as to what the investigation would have produced." *Richardson v. United States*, 379 F.3d 485, 488 (7th Cir. 2004) (internal quotations and citations omitted). Moreover, if the petitioner pled guilty in the criminal proceeding, he must call the Court's attention to information that raises a reasonable probability that he would have insisted upon going to trial had the evidence been uncovered before he pled guilty. *See id.* at 488 (citing *Hill v. Lockhart*, 474 U.S. 52, 58–60 (1985)).

Mediate's motion falls short of the high standard for ineffective assistance claims. Although he has described specifically what avenues he believes Mr. Minch should have investigated, he has not described the evidence he believes Mr. Minch would have uncovered in that investigation. Mediate has not described what would have been captured by the security cameras he identified or what the witnesses he identified would have said to advance his defense.

Mediate argues that interviewing CHS and the McClure Street resident who led

5

investigators to the shotgun would have led to evidence that they cooperated with the government's prosecution of Mediate to achieve favorable resolution of their own criminal cases. *See* civ. dkt. 16 at 3–4. Such evidence may have raised questions about their credibility, but it would not have established Mediate's innocence. Moreover, Mediate pled guilty to intimidating CHS *because his work as a confidential informant led to Gaddy's arrest*. Consequently, Mediate cannot establish a reasonable probability that CHS's work as a confidential informant was unknown at the time he pled guilty or that knowledge of that work would have provoked him to defend his charges at trial had it been discovered sooner. Nor does the Court find a reasonable probability that evidence of the McClure Street resident's cooperation would have caused Mediate to insist upon going to trial. In sum, the Court finds no legal basis to support Mediate's ineffective assistance claim.

**B.     Voluntariness of Plea**

Mediate next asserts that he did not enter voluntarily into his guilty plea. Civ. dkt. 1 at 3–4. Rather, he asserts that the factual basis for his plea was false—that he did not point or discharge a firearm or otherwise threaten CHS. *Id.* at 4. Mediate further asserts that he maintained his innocence to Mr. Minch but that Mr. Minch pressured him to plead guilty anyway. *Id.* at 3–4.

When assessing the voluntariness of a petitioner's guilty plea under § 2255, "representations made to a court during a plea colloquy are presumed to be true." *Hurlow v. United States*, 726 F.3d 958, 968 (7th Cir. 2013) (internal quotations and citations omitted). A petitioner "cannot obtain relief by the expedient of contradicting statements freely made under oath, unless there is a compelling reason for the disparity." *Nunez v. United States*, 495 F.3d 544, 546 (7th Cir. 2007), *judgment vacated and remanded on other grounds*, 554 U.S. 911 (2008).

Mediate's statements in the plea colloquy directly contradict his current assertion that the factual basis for his plea was false. Before the hearing, there appears to have been some

disagreement between Mediate and the government concerning the factual basis for the plea, leaving some question as to whether he would admit to the conduct charged. *See* crim. dkt. 64 at 16:21–21:14. However, at the plea hearing, Mediate did not merely agree to a factual basis presented by the government. Indeed, he actively interjected during the plea colloquy to admit that he intimidated CHS:

```
19            THE COURT:  And you're under oath, Mr. Mediate, so
20    tell the truth.  This is it.  Either you did it or you didn't.
21    So tell the truth.
22            Go ahead, Counsel.
23            MR. MINCH:  Thank you, Your Honor.
24            Mr. Mediate, you and I had reviewed the document
25    that was tendered to the Court this morning as Government's
```

```
 1    Exhibit 1.  Do you recall we reviewed that?
 2            THE DEFENDANT:  Yes, Your Honor.  And can I just
 3    speak?  I did intimidate the witness when I had a shotgun
 4    present.
```

```
 5              THE COURT:  Now, you knew he was a federal witness
 6   and he was a confidential informant against your mother, who
 7   had been arrested for possession with intent to distribute
 8   methamphetamine, correct?
 9              THE DEFENDANT:  Yes.
10              THE COURT:  And you intimidated this person?
11              THE DEFENDANT:  Yes.
```

*Id.* at 21:19–22:11. After additional questioning from the Court, Mediate volunteered that he threatened to kill CHS if he did not move away from the Mars Hill neighborhood:

```
12              THE COURT:  What did you say to him?
13              THE DEFENDANT:  I told him that he should move from
14   the neighborhood.  And I tried to get him -- I told him I
15   would pay for rehab and everything.  I told him he should just
16   move from the neighborhood.  I wasn't coming -- I didn't think
17   I was coming at him in a threatening manner, but I guess I
18   was.  So, I mean, I plea for that.
19              And, I mean, I had a gun on me -- I didn't have a
20   gun on me because he was around.  I have a -- like, I've had a
21   gun on me every day since I was 15, like -- and, I mean, I
22   understand that's wrong of me, so I'm taking this plea, but --
23              THE COURT:  Well, you're pleading to threatening and
24   tampering with a federal witness.  Just telling him, "I'm
25   going to get you in rehab if you leave the neighborhood," is
```

```
                                                              23
1  not a threat.
2          THE DEFENDANT:  I told him to move from the
3  neighborhood or else I would kill him, so --
4          THE COURT:  You told him to move from the
5  neighborhood or you would kill him?  And was that because
6  he -- you knew he was testifying against your mom?
7          THE DEFENDANT:  Yeah.
```

*Id.* at 22:12–23:7

    Mediate's statements in the plea colloquy also establish a presumption that he entered his plea voluntarily and not as a product of coercion by Mr. Minch. When questioned by the Court, Mediate stated that he was pleading guilty as an exercise of his own free will:

```
4          THE COURT:  Are you pleading guilty of your own free
5  will and because you are, in fact, guilty?
6          THE DEFENDANT:  Yes, Your Honor.
```

*Id.* at 8:4–6. Moreover, when asked about the assistance he received from counsel, Mediate did not state that Mr. Minch had pressured him into pleading guilty, but rather stated that he was "fully satisfied" with Mr. Minch's counsel:

```
20          THE COURT:  Thank you.
21          Mr. Mediate, now Mr. Minch is your attorney.  Have
22  you had sufficient time to talk with him about the
23  government's evidence in this case?
24          THE DEFENDANT:  Yes, Your Honor.
25          THE COURT:  And have you talked with Mr. Minch about
```

```
Case 1:14-cr-00082-TWP-DML   Document 64   Filed 05/10/16   Page 7 of 45 PageID #: 230
                                                                   7
   1   ways in which you might defend yourself when you were making
   2   the decision whether you were going to proceed to trial, have
   3   a jury trial, or enter into a plea of guilty?
   4            THE DEFENDANT:  Yes, Your Honor.
   5            THE COURT:  Are you fully satisfied with the
   6   counsel, the representation, and the advice that Mr. Minch has
   7   given you?
   8            THE DEFENDANT:  Yes, Your Honor.
```

*Id.* at 6:20–7:8.

In short, Mediate's own statements at the plea hearing raise a presumption that the factual basis for his plea was accurate and that he pled guilty voluntarily and not based on pressure from Mr. Minch. Mediate has not supported his assertions to the contrary with any evidence or information sufficiently compelling to overcome that presumption. Rather, his petition "simply ignore[s] what he told the judge in open court." *Nunez*, 495 U.S. at 546. Therefore, his assertions concerning voluntariness provide no basis for relief.

**C.     Withholding Exculpatory Evidence**

Mediate next asserts that the government denied him due process of the law by withholding exculpatory evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). Civ. dkt. 1 at 5–6. These assertions do not merit relief.

**1.     Evidence of January 15 Controlled Buy**

A supplement to Mediate's § 2255 motion appears to allege that the government failed to disclose evidence raising a possibility that CHS never actually saw Mediate with a shotgun but

10

instead described to the investigators a shotgun he had seen previously at the McClure Street residence. Civ. dkt. 16 at 5–6. According to an affidavit and to the government's tendered factual basis in Mediate's criminal case, investigators found a sawed-off shotgun above the doorframe inside a closet in a back room of the residence located at 2519 South McClure Street on March 24, 2014. Crim. dkt. 1 at ¶¶ 14–16; crim. dkt. 42 at 2–3. The shotgun matched the description CHS provided to investigators when he reported Mediate's confrontations on March 17. Crim. dkt. 1 at ¶¶ 12, 16; crim. dkt. 42 at 2–3. According to an affidavit filed in Gaddy's case, CHS had purchased methamphetamine from Gaddy at the McClure Street residence on January 15, 2014. Gaddy dkt. 1 at ¶¶ 7–11.

In his supplement, Mediate suggests that CHS might have seen the shotgun while at the McClure Street residence on January 15 and that the government failed to disclose evidence of CHS's visit to the McClure Street residence before Mediate pled guilty. *See* civ. dkt. 16 at 5–6. Mediate further implies that such evidence would have raised the possibility that, on March 17, CHS described to investigators a shotgun he saw while at the McClure Street residence on January 15 rather than a shotgun he saw Mediate point at him on March 17. *See id.* In other words, Mediate implies that the government withheld evidence that undermined its ability to prove that Mediate possessed a shotgun during his interaction with CHS on March 17.

"A *Brady* violation occurs when the prosecution suppresses evidence favorable to the defense and the evidence was material to an issue at trial." *United States v. Mota*, 685 F.3d 644, 648 (7th Cir. 2012), *quoted in United States v. Mandell*, 833 F.3d 816, 824 (7th Cir. 2016). "Material evidence is that which creates a 'reasonable probability that, had [it] been disclosed to the defense, the result of the proceeding would have been different.'" *United States v. Brown*, 822 F.3d 966, 975 (7th Cir. 2016) (quoting *United States v. Stallworth*, 656 F.3d 721, 731 (7th Cir.

11

2011)). For Mediate to prevail in this case, then, evidence of the January 15 controlled buy would have to create a reasonable probability that Mediate would not have pled guilty.

Assuming for the sake of argument that the government suppressed evidence of the January 15 controlled buy, Mediate has not established that the evidence it suppressed was material for *Brady* purposes.

First, there is a significant gap between the evidence of the January 15 controlled buy and the conclusion that CHS saw the shotgun during that controlled buy. The evidence on record in Gaddy's criminal case does not state that CHS saw the shotgun during the January 15 controlled buy. In fact, that evidence does not document that the gun was in the McClure Street residence on that date or even that CHS entered the room where the shotgun was eventually found. Instead, those documents merely state that CHS entered the residence on January 15. *See* Gaddy dkt. 1 at ¶¶ 7–11. Therefore, the Court cannot conclude that the government suppressed evidence showing that CHS encountered this shotgun before he was confronted by Mediate on March 17.

Second, even if CHS saw the shotgun at the McClure Street residence on January 15, that does not rule out the possibility that CHS also saw the gun when Mediate confronted him on March 17. To succeed with this defense, Mediate would have had to do more than merely establish that CHS saw the gun on January 15. Rather, he would have had to persuade the jury that CHS lied about seeing the gun on March 17 and that he was able to do so convincingly because he saw the gun on January 15.

In sum, any defense supported by evidence of the January 15 controlled buy would be far from complete. Accordingly, the Court does not find a reasonable probability that Mediate would have insisted on proceeding to trial had such evidence been disclosed before he pled guilty.

    **2. Evidence of Witnesses' Cooperation with Investigation**

Mediate also alleges that the government failed to disclose evidence undermining the honesty of two potential witnesses. According to Mediate, the confidential informant known as CHS, dating back to the 1990s, "ran around, on a continued crime and drug spree, telling on anyone he could to [escape] prosecution." Civ. dkt. 16 at 6–7. Mediate states that the government "failed to double check his story, or tell the defendant their star witness was a habitual liar." *Id.* at 7.

Mediate also asserts that the government failed to disclose information about the resident of the McClure Street home who led investigators on March 24 to Mediate's room and the shotgun he used to intimidate CHS. *See* crim. dkt. 1 at ¶¶ 14–16. According to Mediate, investigators found this individual in possession of drugs and paraphernalia during a previous controlled buy, implying that he faced criminal charges himself and aided investigators in prosecuting Mediate to achieve a favorable outcome in his own case. Civ. dkt. 16 at 7–8. Mediate argues that the government violated *Brady* by failing to disclose that the McClure Street resident was a cooperating witness. *See id.*

Even assuming that Mediate's assertions regarding CHS and the McClure Street resident are true, and assuming that the government did not disclose that information before Mediate entered his guilty plea, the nondisclosure does not entitle Mediate to relief. As Mediate acknowledges, the government did not fail to disclose evidence of his innocence. Rather, it failed to disclose evidence Mediate could have used to impeach CHS and the McClure Street resident and raise doubts about their honesty had they testified against him at trial. *See id.* at 7. Mediate's arguments are therefore foreclosed, as the Supreme Court has made clear "that the Constitution does not require the Government to disclose material impeachment evidence prior to entering a plea agreement with a criminal defendant." *United States v. Ruiz*, 536 U.S. 622, 633 (2002).

**D.**     ***Johnson* Claim**

Finally, Mediate challenges his conviction and sentence for one of his charges on the basis of *Johnson v. United States*, 135 S. Ct. 2551 (2015). *Johnson* considered the constitutionality of a sentencing enhancement applicable under 18 U.S.C. § 924(e) to a person previously convicted "for a violent felony or a serious drug offense." More specifically, *Johnson* considered § 924(e)(2)(B), which defines the term "violent felony" as any of four specifically enumerated crimes or any other crime that "otherwise involves conduct that presents a serious potential risk of physical injury to another." The Supreme Court found the above-quoted portion of § 924(e)(2)(B)—commonly known as its "residual clause"—unconstitutionally vague, meaning that it "fails to give ordinary people fair notice of the conduct it punishes." *Johnson*, 135 S. Ct. at 2556. As a consequence, the Court held that imposing a § 924(e) sentence enhancement for an offense that could only be defined as a "crime of violence" through the residual clause violates a defendant's due process rights. *Id.* at 2564.

Mediate pled guilty to possessing a short-barreled shotgun in furtherance of a crime of violence in violation of 18 U.S.C. § 924(c)(1)(B)(i). Crim. dkt. 64 at 33:8–14. The definition of a "crime of violence" in § 924(c) includes two components, one of which is similar to the residual clause found unconstitutionally vague in *Johnson*. *See* 18 U.S.C. § 924(c)(3)(B). Given their similarity, the Seventh Circuit extended *Johnson*'s reasoning and deemed § 924(c)(3)(B) unconstitutionally vague as well. *United States v. Cardena*, 842 F.3d 959, 996 (7th Cir. 2016).

Even so, *Cardena* does not allow the Court to grant Mediate's motion. The Seventh Circuit has made clear that "a person who pleads guilty to a § 924(c) offense cannot use *Johnson* and *Cardena*" as a basis for relief under § 2255. *United States v. Wheeler*, 857 F.3d 742, 744 (citing *Davila v. United States*, 843 F.3d 729 (7th Cir. 2016)). "[A] voluntary plea of guilty intelligently made in the light of the then applicable law does not become vulnerable because later judicial

decisions indicate that the plea rested on a faulty premise." *Brady v. United States*, 39 U.S. 742, 757 (1970), *quoted in Davila*, 843 F.3d at 732.

### IV. Conclusion and Certificate of Appealability

For the reasons explained in this Entry, Mediate has failed to show that he is entitled to the relief he seeks, and his motion for relief pursuant to 28 U.S.C. § 2255 must be **denied.** Judgment consistent with this Entry shall now issue.

Pursuant to Federal Rule of Appellate Procedure 22(b), Rule 11(a) of the Rules Governing § 2255 proceedings, and 28 U.S.C. § 2253(c), the court finds that Mediate has failed to show (1) that reasonable jurists would find this court's "assessment of the constitutional claims debatable or wrong," or (2) that reasonable jurists would find "it debatable whether the petition states a valid claim of the denial of a constitutional right" and "whether [this court] was correct in its procedural ruling." *Slack v. McDaniel,* 529 U.S. 473, 484 (2000). The Court therefore **denies** a certificate of appealability.

Finally, Mediate's motion for clarification, dkt. [27], is **denied as moot**. To the extent the motion seeks a prompt resolution of Mediate's case, it has been resolved with this entry. To the extent it seeks clarification of several notations on the Court's docket, they refer to internal case management actions and do not relate in any way to the disposition of Mediate's case.

**IT IS SO ORDERED.**

Date: 3/16/2018

*Tanya Walton Pratt*

TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

Distribution:

LOGAN MEDIATE
ATWATER - USP
ATWATER U.S. PENITENTIARY
Inmate Mail/Parcels
P.O. BOX 019001
ATWATER, CA 95301

Brian L. Reitz
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
breitz@usa.doj.gov

James Robert Wood
UNITED STATES ATTORNEY'S OFFICE
bob.wood@usdoj.gov